**STATE of Iowa, Appellee,**

v.

**Ronald Everett RANDLE, Appellant.**

**No. 90–1395.**

Court of Appeals of Iowa.

Feb. 25, 1992.

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Julie Ann Halligan, Asst. Atty. Gen., Patrick Chambers, County Atty., and Timothy Palmer, Asst. County Atty., for appellee.

Heard by DONIELSON, P.J., and HAYDEN and HABHAB, JJ., but decided en banc.

HAYDEN, Judge.

Ronald Randle was accused of sexually abusing Denise Haglund, a fellow employee. Randle acknowledged a sex act had occurred but claimed it was consensual.

Five days after the alleged sexual abuse, Haglund took a Minnesota Multiphasic Personality Inventory (MMPI) test. Dr. Steven Warner interpreted the MMPI results which indicated Haglund was experiencing relatively little stress or anxiety at that time. Haglund signed a patient waiver authorizing the doctor or hospital to release any information or documents to the Department of Criminal Investigation (DCI). Thereafter, defendant discovered the MMPI had been given. Counsel for the defendant requested Dr. Warner produce the MMPI test results. Dr. Warner sent the MMPI information to defendant's expert, Dr. Samuel Graham. At trial, defendant attempted to buttress his defense of consent by introducing Haglund's MMPI test results. The district court ruled Dr. Graham's testimony was inadmissible because the MMPI information was protected by the doctor-patient privilege.

A jury found Randle guilty of sexual abuse in the third degree. Randle appeals from the resulting conviction.

Randle contends the district court erred by excluding the results of Haglund's MMPI test because Haglund waived the doctor-patient privilege when she released her records to the DCI. The State responds Haglund's waiver was limited to the DCI. The State also responds an unauthorized disclosure of the MMPI results by the doctor did not constitute a waiver by Haglund. Finally, the State argues if any error occurred, such error was harmless as defendant was not prejudiced.

Randle also contends his trial attorney rendered ineffective assistance of counsel in the following respects: (1) by failing to request an instruction on the lesser-included offense of assault with intent to commit sexual abuse; (2) by failing to make a record on several claims of prosecutorial misconduct; (3) by failing to advise him to take the stand; and (4) by failing to request a pretrial hearing pursuant to Iowa Rule of Evidence 412 to determine the admissibility of certain evidence under that rule.

We first address the admissibility of the MMPI information. To find a physician-patient privilege under Iowa Code section 622.10, the following elements must be established: (1) the relationship of doctor-patient; (2) acquisition of the information or knowledge during this relationship; and (3) the necessity of the information to enable the doctor to treat the patient skillfully. *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981); *State v. Cole*, 295 N.W.2d 29, 32 (Iowa 1980). The burden is on one who claims the privilege to show it exists. *State v. Tornquist*, 254 Iowa 1135, 1155, 120 N.W.2d 483, 495 (1963). We conclude a doctor-patient privilege was established. This issue is not contested on appeal.

The State argues under the circumstances of this case public policy supports a finding the doctor-patient privilege was not waived when Haglund authorized the release of her medical information to the DCI. In essence, the State advocates an exception in sexual abuse cases to the general rule that a waiver to a third party is a waiver to all.

We are unwilling to establish such an exception. It is well settled that information communicated to a third party who is not within the scope of the privilege destroys the confidential nature of the disclosures and renders them admissible. *State v. Flaucher*, 223 N.W.2d 239, 241 (Iowa 1974); *Tornquist*, 254 Iowa at 1155, 120 N.W.2d at 495. Haglund is not entitled to the protection of section 622.10 under

this record. When Haglund executed the waiver to the DCI, she obviated the reason for the doctor-patient privilege. The information contained in her medical records was no longer confidential between herself and her physician. Haglund's signed and executed authorization for Dr. Warner to disclose the results of the MMPI test to the DCI constituted a waiver of her doctor-patient privilege.

Haglund signed the waiver for purposes of prosecution, and she believed the MMPI information would remain privileged even after signing the waiver. We determine her intent is of no consequence. We are constrained to do so by the holding in *State v. Cole.* In *Cole* our supreme court stated:

> We are also mindful of the decisions in some other states which hold that the existence of the privilege is determined by the actual, subjective understanding of the patient. Those decisions are premised on the recognition that use of the subjective test would prevent "the privilege accorded the patient [from being] taken from her by trick or fraud." ...
> To turn the issue of the doctor-patient privilege on the subjective intent of a patient is unrealistic, in effect permitting him to await the outcome of the examination before announcing what his subjective intent was.

*       *       *       *       *       *

> Our modern concept of criminal trials favors full disclosure of facts, within constitutional limitations, on both sides of the table. The "sporting" theory of justice resulting from concealment and surprise is no longer the rule.

*Cole*, 295 N.W.2d at 34, 35 (citations omitted).

The State also asserts Dr. Warner's conduct in disclosing the test results did not waive the privilege because only the patient can waive the privilege. We agree only the patient can waive the privilege. We hold Haglund did so by executing the waiver. Dr. Graham's testimony concerning the results of Haglund's MMPI test was admissible. The district court erred in excluding this evidence.

Finally, the State argues defendant was not prejudiced by the exclusion of this evidence because the evidence was merely cumulative. Several witnesses testified Haglund was relatively calm shortly after the sexual abuse occurred. Dr. Bernard testified Haglund's blood pressure and pulse indicated she had experienced more emotional stress during a medical examination conducted three months previously than she experienced on the night of the alleged assault. Dr. Bernard found no sign of trauma which, according to the physician, is usually present in sexual abuse cases.

Dr. Graham's proposed testimony was to the effect Haglund's test scores were not indicative of anxiety. He would have expected her score to show evidence of anxiety as a result of recent sexual abuse. He would have further testified there was nothing in the MMPI test results indicating Haglund suffered any trauma during the previous five days.

We conclude Dr. Graham's testimony was not cumulative. Dr. Graham is a licensed psychologist possessing extensive experience with sexual abuse victims. All of the witnesses who described Haglund's demeanor as calm testified from their personal observations of Haglund. They did not gather this information from testing or statistical data. Dr. Graham was the only witness who would have offered evidence of MMPI test scores and the interpretation and significance of the scores. The MMPI information was the most probative evidence of Haglund's lack of anxiety following the abuse. The exclusion of this evidence was prejudicial to defendant and thus necessitates a new trial. We reverse.

This writer observes the dissent, in its attempt to affirm the trial court, ignores the meritorious issue and central thrust on appeal. We have *not* focused on the narrow issue of whether the results of the MMPI test are inadmissible by reason of the doctor-patient privilege, as the dissent alleges. Rather we have attempted to address the issue presented on appeal. This issue is whether or not the doctor-patient privilege was waived or should an excep-

tion be established in sexual abuse cases. In addressing these matters, we have attempted to apply and follow Iowa established precedent and controlling authorities. The issue on MMPI test *reliability* was not an issue before the trial court, and it is not raised on appeal. The dissent has presented this issue. It would be encouraging for the dissent to provide us with governing authority or legal precedent for its position on this issue.

In light of our holding, we do not address defendant's ineffective assistance of counsel claim.

REVERSED AND REMANDED FOR NEW TRIAL.

All Judges concur except DONIELSON, J., who dissents.

DONIELSON, Judge (dissenting).

I respectfully dissent. The majority opinion focuses only on the narrow question of whether the results of the MMPI test are inadmissible by reason of the doctor-patient privilege. However, I believe the controversy before us implicates the broader issue of the test's reliability for evidentiary purposes. Because we are to affirm the trial court if any reason for affirmance appears in the record, I believe this broader issue must be examined.

Upon my examination of this issue, I find the MMPI test is no more reliable as an evidentiary tool than the polygraph test is. Finding the test too unreliable to be admissible, I would affirm the trial court's exclusion of the evidence proffered in this case. Psychologists should be encouraged to use the MMPI test as a clinical tool for the diagnosis and treatment of the alleged victim, and prosecutors should be encouraged to use this test as an investigatory tool in determining the veracity of the complaining witness's account. Until the test's reliability is more clearly established, however, it should not be used to generate evidence for introduction at trial.

I would affirm.