# IN THE COURT OF APPEALS OF IOWA

No. 20-0561
Filed May 12, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**RICHARD WAYNE LEEDOM,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Poweshiek County, Shawn R. Showers, Judge.

Defendant appeals the district court's decision finding there was no exculpatory evidence in a sexual assault victim's counseling records after conducting an in camera review. **AFFIRMED.**

Christine E. Branstad and Nathan Olson of Branstad & Olson Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Susan R. Krisko, and Thomas J. Ogden, Assistant Attorneys General, for appellee.

Heard by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

This case presents itself on appeal for a second time. In the instant appeal, Richard Leedom challenges the district court's decision finding that there was no exculpatory evidence in a sexual assault victim's counseling records after conducting an in camera review of those records. He also argues the district court used an erroneously narrow definition of exculpatory. Leedom argues the district court was required to consider both materiality and effect on defense strategy and trial preparation when conducting the in camera review of the counseling records. Leedom requests a second remand.

We find the district court did not err in interpreting the Iowa Supreme Court's remand order or the relevant statutes concerning the privacy of mental-health records. The court's interpretation did not violate Leedom's due process rights. The court properly determined the records were confidential. The district court did not abuse its discretion in balancing the victim's privacy interest against Leedom's need for the information. We affirm the decision of the district court.

## I. Background Facts & Proceedings

Leedom was charged with two counts of second-degree sexual abuse, in violation of Iowa Code section 709.3(1)(b) (2016), and indecent contact with a child, in violation of section 709.12(1)(b). The alleged victim of the offenses was a minor child, H.M., who reported three instances of sexual abuse. According to the trial information, the offenses occurred between January 2005 and December 2010.

Beginning in 2015, H.M. participated in counseling with Jessica Schmidt, a therapist. Leedom filed a motion seeking the disclosure of H.M.'s mental-health

counseling records, claiming there was a reasonable probability the records contained exculpatory information. He asked for an in camera review of the records by the court. The State resisted the motion. The district court denied the motion, finding, "The defendant has not shown a compelling need which outweighs the patient's right to confidentiality." Leedom was convicted on two counts of second-degree sexual abuse and indecent contact with a child.

Leedom appealed his convictions. With regard to Leedom's motion for an in camera review of H.M.'s mental health records, the Iowa Supreme Court stated:

> Turning to the merits of Leedom's motion, in our view, the district court abused its discretion by failing to conduct an in camera review of the Schmidt therapy records for exculpatory information. The State lacked corroborating physical evidence of sexual abuse, and its case hinged on H.M.'s credibility. . . . H.M. testified she reported Leedom's abuse to her therapist, Schmidt. Yet Schmidt, a mandatory reporter who would note any abuse in her records, did not report the allegations to the DHS. Leedom argues the district court should have reviewed Schmidt's records because the absence of any mention of abuse by Leedom would be exculpatory as evidence it never happened and would also serve as impeachment evidence against H.M. We agree with Leedom that a sufficient showing was made to require the district court's in camera review. This was a targeted inquiry rather than a fishing expedition.

*State v. Leedom*, 938 N.W.2d 177, 187–88 (Iowa 2020). The court remanded the case to the district court for an in camera review of H.M.'s mental-health records. *Id.* at 196. The court noted, "If the district court finds no exculpatory evidence in those records, Leedom's conviction remains affirmed." *Id.* If the district court found exculpatory evidence, then the court was directed to proceed in accordance with section 622.10(4)(a)(2)(c) and (d) to determine whether Leedom was entitled to a new trial. *Id.*

On remand, the district court conducted an in camera review of notes authored by Schmidt from June 14, 2016, to January 11, 2018. The court determined there was "no exculpatory evidence in records as it relates to absence of disclosure or inconsistent statements by H.M." Also, the court balanced any possible impeachment evidence concerning the custody dispute between H.M.'s parents and determined, "this marginal impeachment information does not outweigh the privacy interests" of H.M. The court further ordered that if there were mental-health records from before June 14, 2016, the records should be provided to the court.

The district court was provided with mental-health records covering the period of February 17, 2015, to May 31, 2016. After an in camera review, the court found "these records offer no reasonable impeachment material for Defendant." The court determined the records did not contain any exculpatory evidence. The court determined, "H.M. did report the sexual abuse by Defendant in a [manner] consistent with her trial testimony." The court concluded Leedom was not entitled to a new trial.

Leedom filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2). The State resisted the motion. The court denied the motion, again noting there was no exculpatory evidence in the confidential records examined by the court. Leedom appeals the district court's decision.

## II. Statutory Background

Leedom's motion requesting the release of H.M.'s privileged records was based on Iowa Code section 622.10(4)(a)(2), which provides:

(a) The defendant seeking access to privileged records under this section files a motion demonstrating in good faith a reasonable probability that the information sought is likely to contain exculpatory information that is not available from any other source and for which there is a compelling need for the defendant to present a defense in the case.

(b) Upon a showing of a reasonable probability that the privileged records sought may likely contain exculpatory information that is not available from any other source, the court shall conduct an in camera review of such records to determine whether exculpatory information is contained in such records.

(c) If exculpatory information is contained in such records, the court shall balance the need to disclose such information against the privacy interest of the privilege holder.

(d) Upon the court's determination, in writing, that the privileged information sought is exculpatory and that there is a compelling need for such information that outweighs the privacy interests of the privilege holder, the court shall issue an order allowing the disclosure of only those portions of the records that contain the exculpatory information. The court's order shall also prohibit any further dissemination of the information to any person, other than the defendant, the defendant's attorney, and the prosecutor, unless otherwise authorized by the court.

Privileged information that does not come within section 622.10(4)(a) is not admissible in a criminal action. Iowa Code § 622.10(4)(b). The statute serves an important purpose by fostering and protecting "necessarily confidential communications." *State v. Neiderbach*, 837 N.W.2d 180, 195 (Iowa 2013). "A powerful counterbalance to the pretrial discovery rights of a defendant is the victim–patient's constitutional right to privacy in [the patient's] mental health records." *State v. Thompson*, 836 N.W.2d 470, 487 (Iowa 2013).

### III. Exculpatory Evidence

**A.** Leedom claims the district court did not properly interpret the term "exculpatory" when it conducted an in camera review of H.M.'s mental-health records. He argues for a wide-sweeping, broad definition to be adopted by the court and suggests that any evidence that could be used to impeach H.M. should

be considered exculpatory and provided to the defense. He states, "Exculpatory evidence includes impeachment evidence, evidence of motive to lie, and any evidence that would generally call into question the reliability of witness statements."

The Iowa Supreme Court's ruling granting Leedom's request for an in camera review of H.M.'s mental-health records required the district court to interpret the remand order and the relevant statutes. Therefore, we review the district court's ruling for the correction of errors at law. *State v. Retterath*, No. 19-2075, 2020 WL 7383807, at *3 (Iowa Ct. App. Dec. 16, 2020) (citing *Taylor v. State*, 632 N.W.2d 891, 894 (Iowa 2001)). On appeal, we may review the confidential mental-health records. *See State v. Barrett*, No. 17-1814, 2018 WL 6132275, at *3 (Iowa Ct. App. Nov. 21, 2018) ("This court has reviewed the mental-health and counseling records the defendant sought . . . .").

The supreme court stated the term "exculpatory" should be given its ordinary meaning, stating, "Exculpatory evidence tends to 'establish a criminal defendant's innocence.'" *Leedom*, 938 N.W.2d at 188 (quoting *Exculpatory Evidence*, *Black's Law Dictionary* (11th ed. 2019)). The court noted that exculpatory evidence includes impeachment evidence because impeachment evidence "may make the difference between conviction and acquittal." *Id.* (quoting *DeSimone v. State*, 803 N.W.2d 97, 105 (Iowa 2011)). The court stated:

> We are satisfied that the absence of any reported abuse in Schmidt's therapy notes for H.M. would be exculpatory within the meaning of Iowa Code section 622.10(4)(a), as would notes of H.M.'s descriptions of abuse materially inconsistent with her testimony. Such records would be useful in cross-examining H.M. and helpful to the jury in weighing her testimony.

*Id.*

Under the law of the case doctrine, "an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case." *Bahl v. City of Asbury*, 725 N.W.2d 317, 321 (Iowa 2006) (quoting *United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 103 (Iowa 2000)). "The appellate court decision is final as to all questions decided and the trial court is obligated to follow that decision." *Id.* Thus, on remand, the district court was obligated to follow the law as set out in *Leedom*, 938 N.W.2d at 188.

The district court's ruling on March 7, 2020, stated, "The Court finds no exculpatory evidence in the records as it relates to absence of disclosure or inconsistent statements by H.M." The court's ruling on March 17, after the court considered additional mental-health records, stated,

> As with the prior notes, the contents contain themes of a custody dispute, though these records offer no reasonable impeachment material for Defendant.
> Additionally, the Court specifically finds that there is no exculpatory evidence in these records. The Court is not going to disclose these confidential records to counsel. However, the Court finds that H.M. did report the sexual abuse by Defendant in a [manner] consistent with her trial testimony.

The rulings reflect the court followed the supreme court ruling concerning the definition of "exculpatory evidence." The court did not consider only evidence that would be directly exculpatory, but also considered evidence that could potentially be used to impeach H.M. Leedom has not shown the district court failed to follow the dictates of *Leedom* when it conducted an in camera review of H.M.'s mental-health records. *See* 938 N.W.2d at 188.

**B.** Leedom contends the district court's narrow definition of "exculpatory evidence" violated his constitutional due process right to present all exculpatory evidence. Under *Brady v. Maryland*, the United States Supreme Court determined that the prosecution violates a defendant's due process rights when there has been a suppression of material evidence favorable to the defendant. 373 U.S. 83, 86 (1963). The *Brady* rule applies to exculpatory, as well as impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987); *see also State v. Barrett*, 952 N.W.2d 308, 312 (Iowa 2020).

Where, as here, the defendant is seeking the disclosure of confidential information, a defendant's due process right to "a fair trial can be protected fully by requiring that the [confidential] files be submitted only to the trial court for *in camera* review." *See Ritchie*, 480 U.S. at 60. "[T]he trial court's discretion is not unbounded. If a defendant is aware of specific information contained in the file . . . he is free to request it directly from the court, and argue in favor of its materiality." *Id.* There is no requirement that all of the confidential information available "had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence." *Id.* at 61. "Neither precedent nor common sense requires such a result." *Id.*

As discussed above, the district court considered whether there was direct exculpatory evidence and whether there was impeachment evidence that would have been helpful to the defense. We conclude the district court's decision did not

violate Leedom's due process rights. Leedom did not have a constitutional right to all of the information in H.M.'s mental health records. *See id.*

## IV. Confidential Communication

Leedom claims the district court erred by determining that information concerning the date when H.M. first mentioned the sexual abuse to her therapist was confidential information under Iowa Code section 622.10. He contends this information cannot be confidential because the therapist was a mandatory reporter, and he argues there could be no expectation of privacy in information that must be conveyed to a third party. *See* Iowa Code §§ 232.69(1), .70(1).

Section 622.10(1) provides that a mental health professional "shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline."

Leedom cites *State v. Randle*, for the proposition that information communicated to a third party loses its confidential nature. 484 N.W.2d 220, 221 (Iowa Ct. App. 1992). In *Randle*, the victim voluntarily waived the doctor-patient privilege. *Id.* Leedom also cites to *State v. Doorenbos*, which noted that a victim's statements to police officers while in the presence of her therapist were not privileged. No. 19-1257, 2020 WL 3264408, at *5 n.4 (Iowa Ct. App. June 17, 2020). These cases come within the exception found in section 622.10(4)(a)(1) ("The privilege holder voluntarily waives the confidentiality privilege."). Leedom has presented no evidence to show H.M. voluntarily waived the confidentiality privilege in her mental-health records. *See Retterath*, 2020 WL 7383807, at *5

("The statute does not authorize disclosure to a defendant unless (1) the privilege holder waives confidentiality or (2) the defendant's request for access to the privileged information meets a threshold test.").

Leedom contends H.M. did not have an expectation of privacy because Schmidt was a mandatory reporter of abuse, and therefore H.M. should have realized Schmidt might be required to disclose H.M.'s statements. Contrary to Leedom's argument, H.M.'s statements to Schmidt were confidential and could be disclosed only under the statutory framework found in section 622.10(4). Section 622.10(4)(b) provides that privileged information that does not come within section 622.10(4)(a) is not admissible in a criminal action.

We conclude the district court did not improperly determine that information concerning the date when H.M. first mentioned the sexual abuse to her therapist was confidential information under Iowa Code section 622.10(4). The court properly followed the mandates of the statute.

### V.     Balancing Test

Finally, Leedom contends the district court misapplied the balancing test found in section 622.10(4)(a)(2)(c). If the court finds exculpatory information during its in camera review of confidential records, "the court shall balance the need to disclose such information against the privacy interest of the privilege holder." Iowa Code § 622.10(4)(a)(2)(c).

"Confidential mental health information that is only marginally exculpatory can be protected by the district court under the balancing test in section 622.10(4)(a)(2)(c)." *Leedom*, 938 N.W.2d at 188. The court should "conduct a full and fair review of the privileged records to determine whether the privileged

records contain exculpatory information." *Barrett*, 2018 WL 6132275, at *3. We review the court's decision for an abuse of discretion. *Id.*

In the March 7 ruling, the district court found:

> The privileged records the Court reviewed does contain additional information that defense counsel could have used for impeachment purposes, specifically as it relates to the custody dispute between H.M.'s mother and father. However, pursuant to Iowa Code 622.10(4)(a)(2)(c), this marginal impeachment information does not outweigh the privacy interests of the privilege holder. Accordingly, the Court finds these therapy notes should not be disclosed to counsel.

The March 17 ruling states, "As with the prior notes, the contents contain themes of a custody dispute, though these records offer no reasonable impeachment material for Defendant." The court specifically found "there [was] no exculpatory evidence in these records."

Prior to oral arguments, Leedom filed a notice of additional authorities. In part, Leedom advocates for this court to "adopt the clarified balancing test" set forth by the supreme court in *Barrett. See* 952 N.W.2d at 313. He asserts a remand is necessary to allow the district court to adopt the new balancing test referenced in *Barrett*, and argues the district court's use of "marginally exculpatory" language is contrary to a new standard adopted by the supreme court. However, as pointed to by the State, the defendant in the *Barrett* opinion had already received the exculpatory evidence. *Id.* at 311. The issue in *Barrett* was whether a new trial was warranted, with the supreme court indicating that when exculpatory documents are erroneously withheld under Iowa Code section 622.10(4), courts should apply the materiality standard to resolve whether a defendant is entitled to a new trial. *Id.* at 313. Under this standard, the court asks whether there exists "a reasonable

probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (citation omitted). The majority found the district court erred in applying too strict a standard in determining whether Barrett was entitled to a new trial.[1] *Id.* at 314. Notably, the *Barrett* decision highlighted that the court was "mindful, particularly in light of the balancing test, required under Iowa Code section 622.10(4)(a), not to judicially readjust the increased consideration given to confidentially interest in the legislature's enactment of section 622.10(4)." *Id.* at 313. We do not find that *Barrett* alters the considerations mandated by the legislature in 622.10(4).

The district court found H.M.'s confidential mental-health records concerning the custody dispute between her parents had only marginal impeachment value. The information about the custody dispute was already in the record, as well as evidence concerning H.M.'s desire to live with her father. *See Leedom*, 938 N.W.2d at 184 ("Defense counsel cross-examined H.M. at trial about how she had lied to improve her father's position in the custody modification so she could spend more time with him."). The mental-health records contain limited information concerning H.M.'s attitude towards her parents. The limited impeachment information is not outweighed by H.M.'s privacy interest in her mental-health records. We determine the district court did not abuse its discretion.

We affirm the decision of the district court.

**AFFIRMED.**

---

[1] The decision noted that the district court did not have the benefit of *State v. Barrett* when it analyzed Barrett's motion for a new trial.